COMMONWEALTH *vs.* JAMES T. WELLINGTON.

Norfolk.   April 2, 1888. — May 3, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Intoxicating Liquors — Possession — Evidence — Intent — Exceptions.*

On an indictment for keeping and maintaining a tenement used for the illegal sale of intoxicating liquors, evidence that a druggist, at whose store liquors were seized, had pending at the time an application for a druggist's license under the St. of 1887, c. 431, which was granted five days later, is competent to explain his possession of the liquors, no sale of liquors having been proved.

INDICTMENT, returned into the Superior Court on September 10, 1887, alleging that the defendant kept and maintained a common nuisance, to wit, a tenement in Stoughton, used for the illegal sale and illegal keeping of intoxicating liquors, on January 1, 1887, and on divers other days and times between that day and August 9, 1887. Trial before *Pitman,* J., who, after a verdict of guilty, allowed the following bill of exceptions:

" The government introduced the testimony of three constables of said town of Stoughton, Callahan, Vanston, and Lane, each of whom testified to a seizure of liquors made at the defendant's drug store, in said Stoughton, on the sixteenth day of July, 1887, of rum, gin, and whiskey, in quantities of less than three quarts each, contained in six ordinary druggist's ornamental shelf bottles, and one cocoa wine bottle. The latter was, at the time of seizure, on the prescription case, and the former were on the shelves of the store with other similar bottles, in an ordinarily conspicuous position. In the back room was a keg that had contained whiskey, and a bottle with some ale, and in the cellar a number of empty ale and porter bottles. No other intoxicating liquor was found. It was in testimony that the defendant's store was an ordinary druggist or apothecary store, with the stationery, fancy goods, cigars, medicines, and soda fountain usually found in an ordinary country drug store. The defendant was not present at the time of the seizure. There was also evidence that on the night of the 4th of June, 1887, the defendant and one Roach came out of the back

door of said store in a state of intoxication; that persons had been seen coming from the shop under the influence of liquor; that persons who came out on the street drank from bottles, and that on two occasions the defendant had been seen to fill bottles from bottles in the store, and give them to customers, and had been seen to conceal from the sight of the officers bottles which he had filled for customers, as the officers stepped in. There was no evidence of a sale of liquor by the defendant. The Commonwealth rested.

" The defendant first called Hiram Blanchard, one of the selectmen of said Stoughton and the clerk of the board, and offered to show by the records of said board of selectmen, that at the time of the seizure said defendant had made application to said board of selectmen for a license of the sixth class under the statutes of 1887, and that five days after the complaint was made, which was the foundation of this indictment, such license was granted to the defendant, and was still in force; but the evidence was excluded by the court. The defendant called one Amasa Lucas, who testified that he lived next door to the defendant's said drug store, and never saw any drunken people go in or out of said store, and never bought or knew of any one else buying liquor of said defendant. Upon cross-examination by the district attorney, he was asked if he had not complained of the place to constable Callahan, to which he replied that he never had, but that he once had some conversation with Callahan alone on the street about the defendant's store. The district attorney asked what the conversation was, to which the defendant objected. The objection was overruled, and the question was put.

" The defendant, among other things, asked the court in charging the jury, to rule that, ' in determining the intent with which the defendant kept liquors which may have been upon his premises, the jury are to consider all the evidence in the case, including the evidence of his purchasing the stock as a whole from his predecessor, the evidence of the officer as to a license, the brief period which elapsed between the date of the finding the liquors and the granting of the license, and the situation in the store in which the liquors seized were kept.' This ruling was given as far as the words ' including the evidence,'

&c., with the following comment: 'Then follows a recital of evidence, supposed to be favorable to the defendant, which I omit because I am not bound to select any particular parts of the evidence, as the Supreme Court have said, in order to help out an argument for the defendant.' The court also instructed the jury, in regard to the license of the defendant, as follows: 'There was no license at this time, and it is entirely immaterial whether there was a license afterwards, because no man is justified in selling liquor in anticipation of getting a license later on.'"

The case was submitted on briefs.

*J. F. Simmons*, for the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

C. ALLEN, J. This case is submitted to us merely on printed briefs, so that we have no opportunity of obtaining from counsel any explanations to aid us in a correct understanding of the bill of exceptions, respecting which we have been somewhat at a loss. The indictment, which was returned into court on September 10, 1887, charged the defendant with having kept a tenement used for the illegal sale and illegal keeping for sale of intoxicating liquors, from January 1, 1887, to August 9, 1887. The defendant kept a drug store. A seizure was made on July 16, 1887, and certain kinds and quantities of liquor were found, and an empty keg which had contained whiskey, and also some empty ale and porter bottles. There was no evidence of a sale. There was other evidence tending to show that the defendant was guilty, but the seizure was also relied on as material and significant evidence tending to establish his guilt; and we must necessarily treat it as important.

The defendant, for the purpose of explaining his possession of liquors at the time of the seizure, offered testimony to show that he had then made an application for a druggist's license, under the St. of 1887, c. 431, which license was granted to him five days after the making of the complaint which was the foundation of this indictment. It is thus to be inferred that there had been such a complaint before a trial justice, though the date of it is not ascertainable from the record before us, and is not absolutely essential. This evidence was excluded. The fact of the subsequent granting of the license could have no other sig-

nificance than as it might tend to show the defendant's good faith in applying for it, and his reasonable expectation of its being granted. But the defendant contends that the fact that he had pending an application for a druggist's license was competent to be considered by the jury in explanation of the fact of his having the liquors on hand. The application for a license would certainly furnish no good explanation of the empty whiskey keg, or the empty ale and porter bottles; but possibly some other explanation might be given in respect to them. So far as the liquors on hand were concerned, it seems to us that the fact of his application for a license might properly be considered by the jury. Take a strong case. Suppose the defendant had previously had a license, and before its expiration made application for a renewal of it, but a delay happened in the granting of the new license, so that for a few days he had no license. The fact that he had liquors on hand during the interval would properly have less weight against him, if these other facts were shown. The existence of a previous license, which had shortly before expired, or the reasonable expectation of obtaining a license upon an application already made, no actual sale being shown, might have some proper weight in the minds of the jury in determining whether the liquors kept by him were intended for illegal sale.

In the instructions to the jury which were requested, reference is made to " the evidence of the officer as to a license," and this request, and the manner in which the court dealt with it, suggest a doubt whether, after all, evidence was not finally admitted that the defendant obtained a license, and had an application therefor pending at the time of the seizure. We are apprehensive that there may have been some inadvertence in signing the bill of exceptions. But we find nothing stated with sufficient distinctness to relieve us from the necessity of determining the bald question whether evidence of the fact that the defendant had an application for a license pending at the time of the seizure might have a material bearing upon the question of his intent in keeping the liquors. We are of opinion that it was admissible.                              *Exceptions sustained.*